RESERVES DEVELOPMENT LLC and The Reserves Development Corporation, Plaintiffs–Below, Appellants,

v.

CRYSTAL PROPERTIES, LLC, Bella Via, LLC, William Esham, William Buchanan, Jr., Eyal Elboim and Yitshak Refaeli, Defendants–Below, Appellees.

No. 56, 2008.

Supreme Court of Delaware.

Submitted: July 8, 2009.

Decided: Nov. 4, 2009.

Reargument Denied Jan. 6, 2010.

Edward M. McNally and Fotini A. Antoniadis, Morris James, LLP, Wilmington, DE, for appellants.

Richard E. Berl, Jr., Smith O'Donnell Feinberg & Berl, LLP, Georgetown, DE, for appellees.

STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice:

In this second appeal from the Superior Court, Reserves[1] seeks a reversal of the

---

1. Reserves Development LLC and The Reserves Development Corporation (collectively known as Reserves and solely owned by Abraham P. Korotki).

trial judge's reduction in damages awarded to Reserves for breach of contract and misrepresentation. Reserves argues that the trial judge erred when he offset damages based on conclusions that were unsupported by the record and the product of an illogical deductive process. With the exception of the offset of $5,461.37 for landscaping and street lighting costs, which we now REVERSE, the record reflects Reserves overpaid for incomplete work on the development. Because the trial judge's decision to reduce the damages award by the amounts overpaid was the product of a logical deductive process, we AFFIRM the remaining offsets.

Reserves further contends that the damages award for misrepresentation was inadequate given that the trial judge failed to consider Bella Via's agreement to contribute its pro rata share of development costs. Because the damages award adequately reflects the post-trial stipulated amounts for those costs, the judgment of the Superior Court is AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

### A. *The Rise and Decline of a Contractual Relationship*

Sussex County approved Reserves' application to develop a 185 home residential community. Reserves and Crystal entered into a Purchase and Sale agreement for thirty unimproved residential lots located in Phase II of the development. Pursuant to the Agreement, Crystal agreed to pay a pro rata share of the development costs.[2] Reserves assumed sole responsibility for any costs not associated with the thirty lots.

Before closing, Crystal assigned its rights and obligations under the Agreement to Bella Via.[3] Bella Via secured a loan from Severn Savings Bank to cover the purchase price, closing costs, and development costs.[4] The Purchase and Sale Agreement closed on October 6, 2004. Following closing, Reserves unilaterally hired a project manager, Obrecht–Phoenix, Inc., and a site contractor, Fresh Cut. To expedite matters, Reserves posted $2.5 million in cash to obtain a line of credit from Wilmington Trust Company to satisfy Sussex County's construction bond requirement.

After reviewing the construction expenses, Bella Via determined that Reserves had exclusive responsibility to pay certain costs. Bella Via discussed that determination with Reserves and asked Reserves to set aside its exclusive costs in order to assure payment. Reserves reiterated that it would pay its exclusive costs, stated its intention to continue billing Bella Via for its proportionate share of the nonexclusive costs, but refused to set aside a sum certain as its "exclusive costs." Bella Via found this arrangement unacceptable and refused to contribute its share of development costs until they and Reserves reached a more acceptable arrangement. Reserves continued to pay Fresh Cut and Obrecht for their services without any contribution from Bella Via.

---

**2.** Initially, Phase II consisted of sixty-seven lots; later, the project expanded to include seventy-one lots. Crystal Properties pro rata share was 30/71 or 42.25%.

**3.** William Esham, William Buchanan, Jr., Eyal Elboim, and Yitzhak Rafaeli created Bella Via, LLC to acquire the thirty lots.

**4.** Severn retained $1.45 million of the loan in a Construction Trust for Bella Via's share of development costs. For Reserves' share, $1.5 million of the purchase price was escrowed at MBNA.

## B. Reserves Files Suits in Superior Court and Court of Chancery

In December 2005, Reserves filed an action for damages against Crystal and Bella Via in Superior Court alleging breach of contract and misrepresentation. Reserves contemporaneously sought equitable relief against Severn Savings Bank in the Court of Chancery.[5] A Vice Chancellor found that Reserves had established its claims of unjust enrichment and equitable estoppel and directed Severn to disburse $316,941.87 to Reserves for Bella Via's share of the infrastructure costs.

In the Superior Court action, the trial judge adopted the Vice Chancellor's previous Findings of Fact 1 through 20, to which the parties stipulated, and awarded Reserves $603,959.12.[6] The trial judge used the $2,835,810.70 figure Reserves claimed it spent developing the community as a base figure and then made several adjustments:

(i) $95,880 reduction for non-conforming pond, (ii) $750,000 reduction for the overvalue of lots used in the land-swap agreement, (iii) $103,000 reduction for remedial work on roads, (iv) $128,311 reduction for failure to adequately prove damages associated with a mulch fire, (v) $310,000[7] reduction for failure to provide a central water source, and (vi) $5,461.37 reduction for unapproved landscape and architectural services.

With respect to Reserves' misrepresentation claim, the trial judge found that the members of Bella Via did have the financial ability and capacity to develop the property and did not commit fraud.[8] Reserves appealed the damages award and the misrepresentation determination. We remanded the case for further findings of fact regarding Bella Via's alleged misrepresentation.

## C. Superior Court Opinion on Remand

On remand, the trial judge found that Bella Via had $1,450,000 available in a trust account for Bella Via's share of the infrastructure costs; thus, Bella Via possessed ample funding to fulfill its obligations.[9] The trial judge found that two Bella Via members, Elboim and Esham, promised to contribute their share of costs but never intended to fulfill that promise. Rather, they intended to gain leverage over Reserves in the dispute over exclusive costs.[10] Elboim and Esham also used those promises to induce Reserves to obtain letters of credit and pay the management fees.[11] As a result, the trial judge rejected Reserves' broad-based attack on all members of Bella Via, modified his earlier bench ruling, and entered a judgment *in personam* against Esham and Elboim, jointly and severally, for $152,434.54.[12]

---

5. *Reserves Dev. LLC v. Severn Savs. Bank, FSB*, 2007 WL 4054231 (Del.Ch. Nov. 09, 2007).

6. *Reserves Dev. LLC v. Crystal Props. LLC*, 2009 WL 1514929 (Del.Super. May 18, 2009).

7. After arriving at an adjusted figure of $1,453,157.70, the trial judge found Bella Via's share to be $613,959.12 (42.25% of the total amount). Then, the trial judge deducted an additional $10,000 for failure to provide a central water source on Lot 6, owned by Crystal.

8. *Reserves Dev. LLC v. Crystal Props. LLC*, C.A. No. 05C–11–011, 2008 WL 2625148 (Del.Super.Jan. 3, 2008).

9. *Reserves*, 2009 WL 1514929, at *11.

10. *Id.* at *12.

11. *Id.*

12. *Id.* at *16. The consequential damages award of $152,434.54 includes $71,466.83 for Bella Via's share of the Wilmington Trust letters of credit and $80,967.71 for Bella Via's share of the Obrecht management fees.

## STANDARD OF REVIEW

 We review questions of fact for abuse of discretion, and accept a trial judge's findings unless they are clearly wrong.[13] We review questions of law *de novo.* Issues A, C, and D below are questions of fact; issue B is a mixed question of fact and law; and issue E is a question of law.

## DISCUSSION

### A. *The Trial Judge's Reduction of Damages for Breach of Contract*

 In a breach of contract action, we determine plaintiff's damages as if the parties had fully performed the contract.[14]

#### i. Offset for Pond Liners

 The trial judge deducted $95,880 from the damages award because Reserves overpaid Fresh Cut for incomplete work on water retention ponds. The overpayment resulted from Fresh Cut's failure to line the ponds with clay as the contract between Fresh Cut and Reserves required. Representatives from Obrecht confirmed that Fresh Cut had not lined the ponds correctly and that remedial work would cost $95,880. Reserves disregarded Fresh Cut's failure to perform correctly and paid Fresh Cut anyway.

The record supports the trial judge's orderly and logical determination that the ponds did not meet the contractual requirements and that Reserves overpaid for non-conforming work. The trial judge appropriately deducted $95,880 from the damage award.

#### ii. Offset for Road Compaction Issues

 For similar reasons, the trial judge deducted $103,000 from the award for in-

complete work on certain roads. Obrecht's unrebutted testimony demonstrates that (i) Fresh Cut failed to perform the necessary compaction test studies before installing stone on the roadways, (ii) the roads failed inspection, and (iii) it cost $103,000 to remedy the errors. Despite these shortfalls, Reserves paid Fresh Cut as billed. Given this evidence, the trial judge justifiably reduced the damage award by $103,000.

#### iii. Offset for Land Transfer

 The trial judge deducted $750,000 from the damages award because of a three-party land contract gone awry. Reserves transferred lots, arguably worth $1,500,000, to Christopher Glenn, and in return, Glenn agreed to assume Reserves' payment obligations to Fresh Cut. Glenn only paid Fresh Cut $750,000. A Bankruptcy Court stipulation confirmed that the lots were worth $750,000 each—only $750,000 reached Fresh Cut. Reserves admits that payment to Glenn did not constitute payment to Fresh Cut. Accordingly, the trial judge justifiably reduced the damage award by $750,000.

#### iv. Offset for Failure to Provide a Central Water Source

 The trial judge reduced the damages award by $300,000, or $10,000 for each of Bella Via's 30 lots, and offset an additional $10,000 for Crystal's Lot 6. The Agreement required Reserves to provide a central water source that each lot would tap for geothermal heating and cooling. Remedial measures cost an additional $11,000 per lot. While there is a difference between the actual amount reduced ($10,000) and the testified cost for each lot ($11,000), the trial judge's determination is

---

13. *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del. 1972).

14. *Paul v. Deloitte & Touche, LLP,* 974 A.2d 140, 146 (Del.2009).

not clearly erroneous, and is supported by the record.

### v. Offset for Cost of Landscaping and Street Lights

■ The trial judge incorrectly reduced $5,461.37 from the damages award. He reasoned that Reserves failed to show that Bella Via or Crystal agreed to pay for Landscape Architectural Services and EBL Engineers. However, paragraph 3(c) of the Agreement clearly obligates the purchaser [Bella Via and Reserves] to "obtain and pay for the installation of . . . street lights, utilities . . . landscaping and other site improvements." [15]

EBL Engineers were responsible for the electrical plan, development, and upgrading electrical service for the 71 lots. Landscape Architectural Services was responsible for the planning and installation of the streetlights and other infrastructure that the Agreement required. All payments to EBL and Landscape Architectural Services were part of the Agreement. The record does not support the trial judge's finding that the parties did not agree to pay directly for EBL's and Engineers and Landscape Architectural Services' costs for those services.

### B. *The Trial Judge's Finding of Personal Liability*

■ A claim for misrepresentation requires: (1) a false representation of fact; (2) made either with knowledge or belief or reckless indifference to its falsity, (3) with an intent to induce the plaintiff to act or refrain from acting, (4) the plaintiff's action or inaction resulting from a reasonable reliance on defendant's representa-

tion, and (5) resulting damages from the reliance.[16] Reasonable reliance is equivalent to justifiable reliance.[17]

### i. The Trial Judge's Finding of an Unconditional Promise

■ Bella Via argues that the trial judge based his misrepresentation findings on a single email sent by Esham. Bella Via argues that by focusing on a single line in a single email, the trial judge failed to consider a chain of emails that reveal that Bella Via and its principals made no unequivocal promises.

Bella Via misstates the trial judge's opinion on remand. The trial judge notes that Elboim spoke with Reserves and agreed that Bella Via would pay its share, and Esham's conduct, when he promised that Bella Via would pay its share and do so immediately. While the trial judge focuses on the June 7th email, he hardly focuses on a single line. Several lines in that email refute Bella Via's argument that no promise was made. For example,

"We are prepared to perform in the same manner as [Reserves] in reference to the letter of credit with Wilmington Trust . . . Our monies will be wired to meet our obligations. . . . We will pay our pro-rated share of the monies needed be deposited for the letter of credit; the letter of credit fee; the lender fees; the permit fees; construction management fees; any other pro-ratable fees. . . . We are ready to perform now." [18]

Not only did Esham and Elboim promise to contribute their share of the costs associated with obtaining the letters of credit and management fees, but Esham also tes-

---

**15.** Pl. Tr. Ex. # 2.

**16.** *Browne v. Robb,* 583 A.2d 949, 955 (Del. 1990).

**17.** *Haase v. Grant,* 2008 WL 372471 at *2 n. 16 (Del.Ch. Feb. 7, 2008).

**18.** Pl. Tr. Ex. ## 10–11.

tified that he never intended to contribute Bella Via's share of costs.[19] Ample evidence supports the trial judge's determination that Esham and Elboim made a promise and never intended to fulfill that promise.

### ii. The Trial Judge's Damages Award

■■ The trial judge modified his previous bench ruling by adding an *in personam* judgment against Elboim and Esham for $152,434.54. That amount consists of $71,466.83 for Bella Via's share of the costs associated with the Wilmington Trust letters of credit and $80,967.71 for Bella Via's share of Obrecht's management fees. Reserves argues that the damages award is inadequate. Particularly, Reserves argues that the damages award should have included 42.25% of the $2,216,233 that it paid in cash for the letters of credit, or $936,358.

Reserves' view ignores the parties' post trial stipulation. In the stipulation, the parties agreed that Reserves paid $191,639.54 in bonding costs and fees, and $80,967.71 of that constituted Bella Via's share. Reserves also fails to support its contention that Bella Via promised to pay $936,358, or nearly two-thirds of their entire construction trust, to obtain a bond— an action never taken. The trial judge justifiably relied on the post trial stipulation to determine the actual damages.

### C. The Trial Judge's Denial of Attorney's Fees

■■ Delaware follows the American Rule that ordinarily requires litigants to pay their own attorney's fees, regardless of the outcome of the lawsuit.[20] Crystal argues that the trial judge illogically denied attorney's fees because he had previously awarded attorney's fees to the defendants. While the rulings may appear inconsistent, the determination of an award of attorney's fees is within the discretion of the trial judge. The trial judge's determination that attorney's fees should not be awarded on remand was not an abuse of discretion.

### D. Denial of Crystal's Trespass Claim

■■ Crystal argues that the trial judge erroneously allowed Reserves to continue using a construction entrance across Lot 6 of Crystal's lands. Crystal further contends that it considered Reserves' use of the construction entrance temporary, when Crystal purchased the land, and that Reserves' continued use constitutes a trespass.

Crystal's arguments are unpersuasive. First, Crystal knew that Reserves used Lot 6 as a construction entrance when they purchased Lot 6. Second, Reserves' predecessors recorded conveyances reflecting the right of way. Third, the recorded conveyance included Lot 6 and a declaration of restrictions that referred to earlier easements and rights of way on the property. The trial judge correctly stated that Crystal's injury "was self inflicted by their knowledge and failure to pay the expenses to develop the project to eliminate the need for access,"[21] and he properly denied Crystal's trespass claims.

---

19. *Reserves Dev. LLC v. Crystal Properties, LLC*, C.A. No. 05C–11–011, 2008 WL 2625148, at 133:8–13 (Del.Super.Jan. 3, 2008) (TRANSCRIPT)

THE COURT· Am I getting out of that, if you had the wiring instructions, you would have wired the money? THE WITNESS: No sir.

Because that's why I say if he'd let me tell the rest of the story. I wouldn't have.

20. *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011, 1015 (Del.2007).

21. *Reserves Dev. LLC v. Crystal Properties, LLC*, C.A. No. 05C–11–011, 2008 WL 282276, at *1 (Del.Super.Jan. 28, 2008).

### E. Entry of Judgment Against Bella Via and Crystal

■ An obligor may delegate his duty to another unless the delegation contravenes public policy or the terms of the promise.[22] Unless the obligee agrees otherwise, neither delegation of performance, nor a contract to assume the duty discharges any duty or liability of the delegator-obligor.[23]

■ Crystal argues that the trial judge incorrectly entered judgment against it, in light of the assignment[24] of its obligations under the Agreement to Bella Via. It is undisputed that Crystal assigned all of its rights and obligations under the Agreement to Bella Via. It is also undisputed that Reserves assented to the assignment as required by the Agreement. However, there is no evidence, by assenting to the assignment, that Reserves intended to accept Bella Via as the sole source of liability under the contract. As it stands, Crystal still remained liable under the Agreement and stood as surety for Bella Via's performance.

### CONCLUSION

For the foregoing reasons, we **REVERSE** the $5,461.37 damage reduction and **AFFIRM** the balance of the Superior Court's judgment.

■

---

**22.** RESTATEMENT (SECOND) OF CONTRACTS § 318(1).

**23.** *Id.* § 318(3). An obligor is discharged by the substitution of a new obligor only if the contract so provides or if the obligee makes a binding manifestation of assent, forming a novation. Otherwise, the obligee retains his original right against the obligor, even though the obligor manifests an intention to substitute another obligor in his place and the other purports to assume the duty. *Id* § 318, comment (d).

**24.** We note that one can assign rights and delegate duties; however, one cannot *assign* duties. The parties, however, use the term, assignment, for both the transfer of rights and duties under the Agreement.