**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| THE MARILYN ABRAMS LIVING TRUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 12829-VCL |
| | ) |
| POPE INVESTMENTS LLC, POPE | ) |
| INVESTMENTS II, LLC, and CHINA ALARM | ) |
| HOLDINGS ACQUISITION LLC, | ) |
| | ) |
| Defendants. | ) |

**OPINION**

Date Submitted: May 16, 2018
Date Decided: May 29, 2018

Thomas E. Hanson, Jr., BARNES & THORNBURG LLP, Wilmington, Delaware; Jeffrey R. Blackwood, BRADLEY ARANT BOULT CUMMINGS LLP, Jackson, Mississippi; *Attorneys for Plaintiff*.

Jonathan M. Stemerman, ELLIOTT GREENLEAF, P.C.; *Attorney for Defendants*.

**LASTER, V.C.**

The Marilyn Abrams Living Trust (the "Trust") sought books and records from the defendant entities (the "Companies"). The Trust made multiple requests for information, but the Companies denied each request in its entirety. The Trust filed this action and prevailed at trial. In addition to ruling in the Trust's favor on the merits,[1] my post-trial decision found that the Companies had raised bad-faith arguments to contest the Trust's clearly established right to information, thus warranting an award of expenses under the bad-faith exception to the American Rule.[2]

---

[1] *See* Dkt. 38.

[2] *See* Dkt. 38 at 14-16. This decision uses the term "expenses" to encompass both attorneys' fees and amounts paid out of pocket to third parties, which are sometimes colloquially called "expenses." Although the terms are often used interchangeably and without precision, the law generally distinguishes among costs, fees, and expenses. *See* 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2666 (2014). "Costs" refers to "taxable costs under Rule 54(d) . . . and represents those expenses, including, for example, court fees, that a court will assess against a litigant." *Id.*; *accord Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund* (*Scion II*), 68 A.3d 665, 686-88 (Del. 2013) (discussing 10 *Del. C.* § 5106). "Fees" refers to "those amounts paid to the court or one of its officers for particular charges that typically are delineated by statute," such as "docket fees, clerk's and marshal's charges, and witness' fees." Wright et al., *supra*, § 2666. "Expenses" encompasses "all the expenditures actually made by a litigant in connection with the action," including attorneys' fees and out-of-pocket expenses paid to third parties. *Id.* The Delaware General Corporation Law likewise uses "expenses" to refer broadly to all of the expenditures actually incurred by a litigant in connection with the action, including attorneys' fees. *See, e.g.*, 8 *Del. C.* § 145(a)-(c); *Meyers v. Quiz-DIA LLC*, 2018 WL 1363307, at *1 n.3 (Del. Ch. Mar. 16, 2018).

After the Companies pursued a motion for reargument, which was denied, the parties conferred regarding the amount of the award. They could not agree, so the Trust moved to quantify it. I granted the Trust a total award of $317,717.20.[3]

The Companies appealed, challenging both the outcome on the merits and the award of expenses. The Delaware Supreme Court affirmed.[4]

The Trust has now moved to recover additional expenses. The Trust seeks a total of $94,583.58, comprising (i) $65,574.78 incurred successfully defending the appeal and (ii) $29,008.80 incurred at the trial level that the Trust had not been able to submit as part of its previous application. The Companies oppose the motion in its entirety.

Whether the Trust can recover these categories of expenses at this time appears to present issues of first impression under Delaware law. This decision concludes that when a trial court has awarded a party expenses under the bad-faith exception to the American Rule, and that party subsequently defends the trial court's ruling successfully on appeal, the trial court lacks authority after the appeal to award the expenses that the party incurred defending the appeal. This decision similarly concludes that when a trial court has awarded a party expenses under the bad-faith exception to the American Rule, and the litigation runs its course at the trial level, resulting in a judgment that is final for purposes of appeal, then that party cannot subsequently ask the trial court for a supplemental award if it later realizes

---

[3] *See* Dkt. 57.

[4] *See Pope Invs. LLC v. Marilyn Abrams Living Tr.*, 177 A.3d 69, 2017 WL 6398168 (Del. Dec. 15, 2017) (TABLE).

that it left certain expenses out of its previous request or determines that it subsequently incurred additional amounts at the trial level. The Trust's application is therefore denied.

## I. EXPENSES INCURRED ON APPEAL

The Trust seeks in its application to recover expenses incurred defending the Companies' appeal. As the Trust sees it, the appeal was frivolous and a continuation of the Companies' bad-faith resistance to the Trust's requests for books and records.

In my view, a trial court lacks authority to award expenses incurred on appeal on the theory that the appeal was frivolous, absent some direction by the Delaware Supreme Court to undertake that task. Supreme Court Rule 20(f) recognizes that "[t]he Court may in any case involving a frivolous appeal, enter a special order assessing costs . . . as justice may require."[5] The reference to "[t]he Court" is to the Delaware Supreme Court, not other courts.

Trial courts in this state do not generally enforce the Delaware Supreme Court's rules. The only high court rules that this court typically applies are Supreme Court Rules 41 and 42, which address, respectively, the process by which a trial court certifies a question of law for the Delaware Supreme Court's consideration and the process by which a trial court certifies an interlocutory appeal. Both rules speak directly to the trial court and tell the trial court what to do. They do not imply that a trial court has jurisdiction to

---

[5] Supr. Ct. R. 20(f).

3

administer other rules. If anything, the specific direction to the trial court in Rules 41 and 42 implies the opposite about other Supreme Court rules.

For the contrary proposition, the Trust relies on four cases: *Gatz Properties, LLC v. Auriga Capital Corp.*,[6] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*,[7] *Wheeler v. Wheeler*,[8] and *Council of Wilmington Condominium v. Wilmington Avenue Associates, L.P.*[9] None of these decisions resemble the scenario presented here.

In *Gatz*, the Delaware Supreme Court directed the trial court to consider an application for expenses based on an allegedly frivolous appeal. The appellees in *Gatz* moved before the Delaware Supreme Court to recover expenses under Supreme Court Rule 20(f). The Delaware Supreme Court noted that "[t]his Court has authority to award attorney fees in appropriate cases."[10] But the high court chose to have the Court of Chancery address the application in the first instance, explaining:

> In this case, however, whether the appellants acted in bad faith in pursuing this appeal is a question possibly requiring findings of fact that are better addressed by the Court of Chancery. We, therefore, deny the appellees' motion without prejudice to their

---

[6] 59 A.3d 1223 (Del. 2012) (per curiam).

[7] 68 A.3d 665 (Del. 2013).

[8] 636 A.2d 888 (Del. 1993).

[9] 1999 WL 1223792 (Del. Super. Nov. 3, 1999).

[10] *Gatz*, 59 A.3d at 1223.

4

> right to pursue in the Court of Chancery their claim for attorney fees on appeal.[11]

The superior tribunal in *Gatz* thus determined that the trial court should assess the Rule 20(f) application in the first instance because of likely factual issues. In my view, the *Gatz* case does not suggest that a trial court always has the ability to consider a post-appeal application for expenses based on a claim that the appeal was frivolous for purposes of Rule 20(f). It rather illustrates the obvious fact that that the Delaware Supreme Court can delegate to this court the task of taking the first cut at ruling on a Rule 20(f) application. In this case, the Trust did not make a Rule 20(f) application before the Delaware Supreme Court, and the Delaware Supreme Court did not instruct this court to take a first cut at ruling on a Rule 20(f) application.

The *Scion* decision did not involve an allegedly frivolous appeal; it involved a remand to consider an alternative basis for expense-shifting at the trial level. Originally, at the trial level, the plaintiffs sought to recover their expenses under prevailing-party provisions in the governing agreements, and I granted the application.[12] On appeal, the Delaware Supreme Court held that the prevailing-party provisions did not apply.[13] The high court then turned to the appellees' argument that there were separate and independent bases to affirm the fee award, either as an award pursuant to 10 *Del. C.* § 5106 or under the

---

[11] *Id.* (footnote omitted).

[12] *See ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC* (*Scion I*), 50 A.3d 434, 447 (Del. Ch. 2012).

[13] *Scion II*, 68 A.3d at 683-84.

5

bad-faith exception to the American Rule. The Delaware Supreme Court rejected the potential application of Section 5106,[14] but left open the possibility of fee shifting under the bad-faith exception. Rather than ruling in the first instance on that theory, the high court remanded the case so that I could address it in the first instance.[15]

At the same time, the high court denied an "informal application for an award of attorneys' fees for this appeal," made in a single sentence of the appellees' answering appellate brief.[16] The high court reasoned that it would not rule on such a request "in the absence of a formal motion made and presented in accordance with the Supreme Court rules."[17] *Scion* thus does not imply that a trial court has the power to consider an application for expenses based on an allegedly frivolous appeal. It rather indicates that the Delaware courts will not entertain an application for expenses for an allegedly frivolous appeal without a formal Rule 20(f) motion. In terms of the further proceedings on remand, the *Scion* decision illustrates a trial court's obligation to address an issue in accordance with the Delaware Supreme Court's mandate. In this case, the Trust did not make a Rule 20(f) motion, and the Delaware Supreme Court did not remand the case with instructions for me to consider any alternative bases for shifting expenses.

---

[14] *See id.* at 683-88.

[15] *Id.* at 688.

[16] *Id.*

[17] *Id.* (internal quotation marks omitted) (quoting *Gatz*, 59 A.3d at 1222 n.96).

The *Wheeler* decision involved a prolonged divorce proceeding in the Family Court that witnessed an improvident interlocutory appeal, a subsequent appeal from the final judgment, and a further appeal after the Family Court ruled on a series of ancillary matters. At each stage, the Family Court ruled in favor of the husband, and the wife appealed. The Delaware Supreme Court dismissed the improper interlocutory appeal, affirmed the Family Court's ruling on the merits, and affirmed the Family Court's rulings on the ancillary matters. After each appeal, the Family Court granted the husband's motion for the expenses incurred litigating the appeal. After the final award, the wife appealed again, contending that the Family Court lacked jurisdiction to award expenses for an appeal. The Delaware Supreme Court affirmed all of the Family Court's awards, citing a statute that gives the Family Court authority to shift expenses from one party to another.[18] The high court held that "[t]he unambiguous language of the statute confers original jurisdiction upon the Family Court to award attorney's fees following an appeal to this Court" and that "[t]he Family Court's jurisdiction to award attorney's fees following an appeal is not dependent upon a remand from this Court."[19] In this case, there is no similar statute that would give this court jurisdiction to award expenses following an appeal.

Last, in *Wilmington Condominium*, the Superior Court extended the logic of *Wheeler* to a situation in which a party recovered expenses at the trial level pursuant to a

---

[18] *See Wheeler*, 636 A.2d at 890 (citing 13 *Del. C.* § 1515).

[19] *Id.*

prevailing-party provision in an agreement. After the party prevailed again on appeal, the party returned to the trial court and sought additional expenses. The trial court concluded that the contractual prevailing-party provision continued to operate and entitled the party to recover expenses for prevailing on appeal.[20] In this case, the Trust has not cited a prevailing-party provision that could operate to the same effect.

None of the Trust's cases support the proposition that this court has inherent authority to entertain an application to recover expenses for a frivolous appeal. The cases instead suggest that unless a party moves for expenses pursuant to Rule 20(f), and unless the Delaware Supreme Court instructs the trial court to address the motion in the first instance, the trial court lacks jurisdiction to consider the application. A trial court may, however, award expenses if the party seeking them has an independent right of recovery, such as pursuant to a statute (*Wheeler*) or a contractual prevailing-party provision (*Wilmington Condominium*). The Trust invokes this court's inherent authority, which is unavailing.

Federal authority points to the same conclusion.[21] In *Cooter & Gell v. Hartmarx*

---

[20] *Wilmington Condo.*, 1999 WL 1223792, at *2; *accord New Castle Auto Auction & Consignments, Inc. v. Riley*, 2017 WL 2676966, at *2 (Del. Com. Pl. Apr. 17, 2017).

[21] *See Plummer v. Sherman*, 861 A.2d 1238, 1242 (Del. 2004) ("[T]he Delaware Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure. We therefore find certain federal cases appropriate for determining the proper interpretation of the Delaware Rules of Civil Procedure.").

*Corp.*,[22] the United States Supreme Court considered whether a district court that had awarded sanctions against a defendant for asserting a counterclaim that violated Rule 11 of the Federal Rules of Civil Procedure could grant the injured plaintiff the additional expenses that the plaintiff incurred defending the award on appeal. The Court held that the district court lacked the necessary authority because Rule 11 applied only to trial court proceedings, not to appeals, and that "[i]f the appeal of a Rule 11 sanction is itself frivolous, Rule 38 gives appellate courts ample authority to award expenses."[23] Rule 38 of the Federal Rules of Appellate Procedure addresses awards of expenses for frivolous appeals in a manner analogous to Delaware Supreme Court Rule 20(f). The highest court in the land did not view the district court as having independent authority to administer Rule 38.

The *Cooter & Gell* decision also considered and rejected a related theory under which one line of decisions from the United States Courts of Appeals had awarded expenses that a party incurred successfully defending a Rule 11 sanction on appeal. Those decisions held that the party incurred the expenses on appeal because of the sanctioned pleading; hence the injured party should be able to recover those expenses and be made whole for the sanctioned conduct.[24] The United States Supreme Court disagreed, endorsing instead the view of other circuits and holding that "[i]f the district court imposes Rule 11

---

[22] 496 U.S. 384 (1990).

[23] *Id.* at 407.

[24] *See id.* at 406 (describing decisions issued by the United States Courts of Appeals for the First and Seventh Circuits).

sanctions on the plaintiff, and the plaintiff appeals, the expenses incurred in defending the award on appeal are directly caused by the district court's sanction and the appeal of that sanction, not by the plaintiff's initial filing in district court."[25] The highest court in the land observed that this outcome "accords with the policy of not discouraging meritorious appeals" and also would help avoid "the undesirable effect of encouraging additional satellite litigation."[26] The Court recognized that its holding meant that a litigant who benefited from a Rule 11 award would have to spend its own money to defend the award, but viewed that outcome as "a natural concomitant of the American Rule."[27]

The *Cooter & Gell* decision is not binding as to matters of Delaware law. Nevertheless, I find its reasoning persuasive, both for sanctions awarded under Rule 11 and for awards of expenses under the bad-faith exception to the American Rule.

In my view, the Trust cannot recover the expenses it incurred litigating the Companies' appeal to the Delaware Supreme Court. That aspect of its motion is denied.

## II. ADDITIONAL TRIAL-LEVEL EXPENSES

The Trust's application also seeks to recover additional expenses incurred at the trial level before the appeal. The Trust either was billed for the pertinent amounts after it filed its motion or incurred the amounts after I quantified the award.

---

[25] *Id.* (describing decisions issued by the United States Courts of Appeals for the Fourth and Ninth Circuits).

[26] *Id.* at 408.

[27] *Id.*

In my view, a trial court lacks authority to award additional expenses under the bad-faith exception to the American Rule after entering a judgment that has become final for purposes of appeal. This is particularly true after the appeal has concluded, resulting in the final disposition of the case.

Since 1991, the Delaware Supreme Court has held that a final order remains interlocutory until any outstanding applications for expenses has been adjudicated.[28] A trial court therefore cannot defer ruling on an application for expenses until after the merits appeal is completed, unless the trial court first certifies its merits ruling as interlocutory or as a partial final judgment pursuant to Court of Chancery Rule 54(b).[29] In the ensuing appeal from a final order, the Delaware Supreme Court can review both the merits and the

---

[28] *See Emerald P'rs v. Berlin*, 811 A.2d 788, 790-91 (Del. 2001) ("This Court has consistently held, and recently reaffirmed, that a judgment on the merits is not final until an outstanding application for an award of attorney's fees has been decided."); *accord Lipson v. Lipson*, 799 A.2d 345, 348 (Del. 2001); *Gaffin v. Teledyne, Inc.*, 602 A.2d 1081, 1991 WL 181488, at *1 (Del. 1991) (TABLE); *Moskowitz v. Moskowitz*, 588 A.2d 1142, 1991 WL 32164, at *1 (Del. 1991) (TABLE). Before these decisions, the Court of Chancery had on occasion deferred considering an application for fees and expenses until after the outcome of the appeal on the merits, resulting in two potential appeals. *See, e.g.*, *Campbell v. Caravel Acad., Inc.*, 1989 WL 25804, *1 (Del. Ch. Mar. 16, 1989) (resolving "the issue of attorney fees and costs" following the Delaware Supreme Court's affirmance of the decision resolving the merits because "[c]osts and attorney fees are best addressed after the appellate process is completed").

[29] *See In re Del Monte Foods Co. S'holders Litig.*, 2011 WL 2535256, at *7 n.2 (Del. Ch. June 27, 2011).

11

award of expenses, as it did here, and can pass on both the propriety of the award and the amount.[30]

To my mind, this legal framework counsels against permitting subsequent applications for additional expenses. For one, the subsequent application is inconsistent with the earlier final order being final. For another, the possibility of a follow-on application at the trial level undermines the Delaware Supreme Court's ability to review the amount of the award of expenses, because the award could increase later. One answer to that problem might be to permit a second appeal after any additional award, but that solution would result in piecemeal appeals, which is contrary to Delaware Supreme Court policy.[31] The high court's requirement that applications for expenses be addressed before an order becomes final for purposes of appeal appears designed to minimize the potential

[30] *See, e.g.*, *RBC Capital Mkts., LLC v. Jarvis*, 129 A.3d 816, 876-79 (Del. 2015); *Biolase, Inc. v. Oracle P'rs, L.P.*, 97 A.3d 1029, 1036 (Del. 2014); *Crombie v. Paron Capital Mgmt., LLC*, 62 A.3d 1223, 2013 WL 1087643, at *1 (Del. 2013) (TABLE); *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 352-53 (Del. 2013); *Black v. Staffieri*, 2013 WL 1045221, at *1 (Del. 2013) (TABLE); *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1252-62 (Del. 2012); *Reserves Dev. LLC v. Crystal Props., LLC*, 986 A.2d 362, 369 (Del. 2009); *Brown v. Lacey*, 670 A.2d 1336, 1995 WL 715633, at *2 (Del. Oct. 30, 1995) (TABLE).

[31] *See Hill Int'l, Inc. v. Opportunity P'rs L.P.*, 119 A.3d 30, 36-37 (Del. 2015) (discussing "our long established policy against piecemeal appeals" and "reiterat[ing] our policy against piecemeal appeals"); *Tyson Foods, Inc. v. Aetos Corp.*, 809 A.2d 575, 580 (Del. 2002) ("The policy underlying the final judgment rule is one of efficient use of judicial resources through disposition as a whole, rather than piecemeal."); *see also* Supr. Ct. R. 42(b)(ii) ("Interlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scare party and judicial resources.").

for multiple appeals in the same case, with one appeal from the merits and another from the award of expenses. Permitting a later application for additional expenses would reintroduce this possibility.

As a general rule, the federal courts take a different approach to order finality by treating a trial court decision on the merits as final for purposes of appeal even if a party may file (or has filed) an application for expenses.[32] When the application involves a motion for Rule 11 sanctions, however, the United State Court of Appeals for the Third Circuit has adopted a supervisory rule requiring that the Rule 11 motion be adjudicated before the judgment becomes final.[33] The court reasoned that "[s]wift disposition of a Rule 11 motion is essential so that any ensuing challenge to it might be included with the appeal on the merits."[34] Although other federal courts have taken a different approach,[35] the Third

---

[32] Fed. R. Civ. P. 54 advisory committee's notes to 1993 amendment ("Filing a motion for fees under this subdivision does not affect the finality or the appealability of a judgment, though revised Rule 58 provides a mechanism by which prior to appeal the court can suspend the finality to resolve a motion for fees. If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice . . . [until] after the appeal has been resolved.").

[33] *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988).

[34] *Id.*

[35] *See, e.g.*, *Cmty. Elec. Serv. of L.A., Inc. v. Nat'l Elec. Contractors Ass'n, Inc.*, 869 F.2d 1235, 1242 (9th Cir. 1989) (declining to follow *Lingle* and permitting filing of Rule 11 application after entry of final order), *abrogated on other grounds by Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990). The Third Circuit has not extended its supervisory rule to applications under 28 U.S.C. § 1927, instead permitting a Section 1927 application to be filed within a reasonable time after judgment has been entered. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101-02 (3d Cir. 2008); *accord Steinert v. Winn Gp., Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006). Section 1927 provides as

13

Circuit's supervisory rule enforces an appellate regime for Rule 11 sanctions that resembles Delaware's. That policy choice reinforces my view that the amount awarded under the bad-faith exception to the American Rule should be determined before an order becomes final for purposes of appeal so that the appellate tribunal, here the Delaware Supreme Court, can pass upon both the legitimacy of the award and the amount.

When a party seeks to recover expenses on a basis other than Rule 11, the Federal Rules of Civil Procedure provide that the party seeking expenses must file a motion to that effect within fourteen days after the judgment is entered, unless a statute or court order establishes a different framework.[36] The notes of the Advisory Committee suggest several purposes for the short filing period. One is to ensure "that the opposing party is informed of the claim before the time for appeal has elapsed."[37] Another is to afford "an opportunity for the trial court to resolve fee disputes shortly after trial, while the services performed are freshly in mind."[38] The short time period "also enables the court in appropriate

---

follows: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

[36] Fed. R. Civ. P. 54(d)(2)(B)(i). For example, the Equal Access to Justice Act creates a statutory scheme for filing fee petitions. *See Scafar Contr., Inc. v. Sec'y of Labor*, 325 F.3d 422 (3d Cir. 2003).

[37] Fed. R. Civ. P. 54 advisory committee's notes to 1993 amendment.

[38] *Id.*

circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case."[39]

These policy interests apply equally to the Delaware courts, but must be evaluated within a regime in which the Delaware Supreme Court has held that an order is not final until the trial court has ruled on any fee application. In my view, for purposes of Delaware law, these policy interests counsel in favor of not entertaining further applications for expenses after an order has become final. First, the federal policy interest in facilitating the possibility of a single, comprehensive appeal dovetails with the Delaware Supreme Court's preference for unitary appeals. Second, the federal policy interest in giving a party notice of the expense application before that party must decide whether to appeal translates readily to the Delaware system. Although it did not matter in this case, a party might well take into account its liability for expenses when deciding whether or not to appeal. A party that chooses to forgo an appeal should not be exposed to a later application that would significantly increase its liability. Third, although the federal concern about promoting prompt review strikes me as a secondary consideration, it is nevertheless relevant. A post-final-order application, particularly one filed after an appeal is over, may arrive after the trial court's recollection of the proceedings has dimmed. While the trial court could refresh

---

[39] *Id.*

its recollection about the case, that step comes at a cost of judicial resources that could be expended on other matters.[40]

Conversely, limiting a party to the amount of the award that it obtains before the appeal has the salutary effect of incentivizing counsel to bill their time, secure invoices from third-party suppliers, and otherwise bring the case to a conclusion. If a party needs more time before filing an application, it can request it.

Inevitably, there will be some frictional costs and slack in the system, and that will translate into a party bearing some portion of trial-level expenses that it otherwise might have recovered. No system will be perfect. In my view, a framework that limits a party to the expenses it sought and was awarded under the bad-faith exception to the American Rule before the final judgment was rendered results in a more efficient litigation regime.

This decision need not address whether the same outcome would apply to a follow-on application for costs. The Delaware Supreme Court has held that a pending application for costs does not undermine the finality of a judgment, rendering that aspect of the analysis

---

[40] *Cf. Blue Hen Mechanical, Inc. v. Christian Brothers Risk Pooling Trust*, 117 A.3d 549, 550 (Del. 2015) (declining to entertain cause of action for malicious prosecution for an array of policy reasons, including that adjudicating a second lawsuit, after the entry of final judgment in the first, would result in "the least efficient and least just approach to addressing alleged bad faith conduct" because it would "encourage litigants feeling victimized by undignified litigation conduct to file a new suit, likely before anew judge," and that "even if the same judge who heard the original litigation that was supposedly tainted by malice heard the second suit, she would need to revive her memory and knowledge of the record at that later date").

inapplicable.[41] Nor would the same outcome necessarily hold for a follow-on application for expenses under a statute or contract that provides for recovery. Delaware precedent permits post-remand applications to recover expenses incurred on appeal under statutory or contractual prevailing-party provisions, which suggests a different calculus.[42] In this case, the Trust recovered expenses under the bad-faith exception to the American Rule, and this decision is limited to that scenario.

In my view, the Trust cannot recover additional expenses it incurred at the trial level before its appeal to the Delaware Supreme Court. That aspect of its motion is also denied.

---

[41] *See Emerald P'rs*, 811 A.2d at 791.

[42] *See Wheeler*, 636 A.2d at 890; *Wilmington Condo.*, 1999 WL 1223792, at *2.