# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CONTINENTAL FINANCE<br>COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N19C-07-184 AML |
| | ) | |
| ICS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: December 4, 2019
Decided: February 20, 2020

## ORDER

**Defendant's Motion for Partial Dismissal: Granted in Part, Denied in Part**

1.     This dispute arises from Plaintiff's and Defendant's agreement regarding the marketing and promotion of credit card products to consumers. The parties' agreement required Defendant to distribute and promote Plaintiff's credit card applications through mass-market mailings. Plaintiff agreed to compensate Defendant for each credit card account opened as a result of Defendant's marketing as well as for Defendant's actual costs of postage and freight for all mailings. Plaintiff contends Defendant improperly and fraudulently inflated its postage and freight costs and misrepresented those costs to Plaintiff through monthly and itemized invoices.

2. On July 23, 2019, Plaintiff filed this action after Defendant refused to (i) fully reimburse Plaintiff for years of allegedly fraudulent billings, and (ii) produce relevant documents under the agreement's right to audit provision. Defendant moved to dismiss Plaintiff's fraud and attorneys' fees claims for failure to state a claim and further moved to dismiss Plaintiff's breach of contract claim to the extent it seeks damages incurred more than three years before Plaintiff filed suit. Defendant's motion requires this Court to determine, *inter alia*: (i) whether Plaintiff may pursue a fraud claim when the allegedly fraudulent invoices also are the basis of Plaintiff's breach of contract claim, and (ii) whether Plaintiff's averment that the invoices in question concealed Defendant's inflation of postage is sufficient to toll the statute of limitations.

3. For the reasons that follow, I conclude Plaintiff's fraud claim must be dismissed because it is not based on any duty independent of the contract and impermissibly seeks to bootstrap a fraud claim to a contractual duty. Plaintiff also fails to advance any contractual, statutory, or common law basis for shifting attorneys' fees. As to the statute of limitations, Plaintiff adequately pleads fraudulent concealment, and the entirety of Plaintiff's breach of contract claim therefore survives.

2

## BACKGROUND

4.     The following facts are drawn from the complaint and the documents incorporated by reference therein.  In 2012, Plaintiff and Counterclaim Defendant Continental Finance Company, LLC ("Continental") and Defendant and Counterclaim Plaintiff ICS Corporation ("ICS") executed a contract titled the ICS Nonexclusive Credit Card Marketing Agreement (the "Agreement").[1]  Under the Agreement, ICS agreed to provide direct mail services for the marketing and promotion of Continental's credit card applications to potential consumers.  In return, Continental agreed to compensate ICS for each credit card account established as a result of ICS's marketing and promotion.  Continental also agreed to establish a postage escrow account to fund the postage and freight costs necessary to mail the marketing materials.  The Agreement authorized ICS to invoice Continental for ICS's "actual costs of postage[.]"[2]  Each month, ICS prepared an invoice for Continental with the postage costs and an itemized invoice including the cost of materials and freight charges.

5.     At the end of 2018, Continental became suspicious of ICS's billing practices and believed ICS was inflating its postage and freight costs.  Continental's suspicions were raised when it received quotes from other direct mail providers that

---

[1] *See* Compl. Ex. 1, ICS Nonexclusive Credit Card Marketing Agreement (hereinafter "Agreement").
[2] *Id.* § 3(b).

3

substantially were lower than ICS's charges. Continental alleges ICS's President/CEO, Matthew Bastian, admitted during a January 2019 meeting to overcharging Continental, but ICS refused to offer full compensation for the years of fraudulent billing.

6.     The Agreement additionally contained a right to audit provision, which permitted both parties to "examine and audit Continental and ICS's records, premises, and procedures related to the services provided/received to/by ICS/Continental under this Agreement, and those of any subcontractors, . . . to ensure compliance with the terms of this Agreement."[3] Continental attempted to exercise this contractual right on June 11, 2019 to acquire all invoices for postage paid between February 2014 and September 2018, but ICS refused to produce relevant documents. Continental filed this breach of contract and fraud action against ICS on July 23, 2019. On August 30, 2019, ICS filed an answer to the complaint and a counterclaim for breach of contract. ICS then moved to dismiss some of Continental's claims under Superior Court Rule 12(b)(6), and the parties briefed and argued that motion.

**ANALYSIS**

7.     On a motion to dismiss, the Court must determine whether the plaintiff "may recover under any reasonably conceivable set of circumstances susceptible of

---

[3] *Id.* § 20.

proof[.]"[4]  A court may grant the motion if "it appears to a reasonable certainty that under no state of facts which could be proved to support the claim asserted would [the] plaintiff be entitled to relief."[5]  When applying this standard, the Court will accept as true all non-conclusory, well-pleaded allegations[6] and must draw all reasonable factual inferences in favor of the non-moving party.[7]

**I.  Count II of the complaint fails to state a fraud claim based on conduct distinct from that underlying the breach of contract claim.**

8.  ICS argues Continental's fraud claim fails for the following reasons: (1) the fraud claim merely restates the breach of contract claim and Continental is attempting to "bootstrap" the contract claim into a tort claim for fraud; (2) Continental has not pled damages for the fraud claim distinct from the breach of contract claim; and (3) the fraud claim was not pleaded in the alternative and therefore cannot proceed as an alternative claim.

9.  Continental contends the bootstrapping doctrine does not provide a basis to dismiss the fraud claim.  Continental alleges ICS committed fraud that went beyond ICS's alleged breach of its contractual obligations to Continental such that it would constitute a fraud claim separate and distinct from the breach of contract

---

[4] *Holmes v. D'Elia*, 2015 WL 8480150, at *2 (Del. Dec. 8, 2015) (quoting *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).
[5] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960).
[6] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).
[7] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (citing *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998) (internal citations omitted)).

5

claim. Continental also argues that if the Court disagrees that the fraud claim is distinct from the contract claim, the Court should permit Continental to pursue both claims in the alternative.

**A.   Continental's fraud claim is barred by the bootstrapping doctrine.**

10.   In Delaware, a plaintiff cannot "bootstrap" a breach of contract claim into a fraud claim.[8] In order for a breach of contract claim and a fraud claim to survive in a single action, "the plaintiff must allege that the defendant breached a duty that is independent of the duties imposed by the contract."[9]

11.   Continental claims ICS intentionally misrepresented the actual postage and freight amounts owed by Continental over the course of their business relationship. Continental argues that ICS "committed fraud over and above its breach of its contractual obligations to Continental" and that ICS created and submitted fraudulent documentation regarding the owed postage and freight amounts.[10] At oral argument, however, when pressed by the Court, Continental could not identify a duty independent of the parties' contract other than a "duty not to lie." This argument is unavailing; Delaware precedent requires a legal duty to

---

[8] *EZLinks Golf, LLC v. PCMS Datafit, Inc.,* 2017 WL 1312209, at *5 (Del. Super. Mar. 21, 2017) (corrected).

[9] *Id.* at *3 (quoting *Brasby v. Morris,* 2007 WL 949485, at *7 (Del. Super. Mar. 29, 2007)); *see Brightstar Corp. v. PCS Wireless, LLC,* 2019 WL 3714917, at *10 (Del. Super. Aug. 7, 2019).

[10] Pl.'s Answering Br. in Opp'n to Mot. to Dismiss (hereinafter "Pl.'s Answering Br.") 7.

support a fraud claim, not a vague reference to a moral duty to be truthful.[11] To the extent the invoices were "false" or "inflated," they are so characterized only in reference to the contractual language requiring Continental to pay ICS's "actual costs of postage[.]"[12] Continental's fraud claim therefore is not based on a duty distinct from the parties' contractual obligations.[13]

**B.    Continental does not plead fraud damages distinct from breach of contract damages.**

12.    Even if Continental pleaded a fraud claim distinct from its contractual claim, the fraud claim would fail because Continental has not pleaded distinct damages. To successfully plead a fraud claim, a plaintiff must allege it sustained damages as a result of the defendant's action.[14] The alleged fraud damages must do more than "rehash" the damages allegedly caused by a breach of contract claim arising from the same underlying events.[15] Failure of a plaintiff to plead distinct damages for a breach of contract claim and a fraud claim is an independent ground for dismissal.[16]

---

[11] This is not to say there never is an enforceable "duty not to lie." Such a duty may arise, for example, in a fiduciary relationship or when a party in arms-length negotiations makes an affirmative representation. But those are not the facts of this case.

[12] Agreement § 3(b).

[13] Having concluded the fraud claim must be dismissed on other grounds, the Court need not reach ICS's arguments based on the economic loss doctrine.

[14] *Novipax Holdings LLC v. Sealed Air Corp.*, 2017 WL 5713307, at *14 (Del. Super. Nov. 28, 2017).

[15] *Id.*

[16] *EZLinks Golf, LLC*, 2017 WL 1312209, at *6.

13.     Here, Continental's damages claims for the alleged fraud and breach of contract appear virtually indistinguishable.  In Continental's prayer for relief, it requests "[d]amages for breach of contract that ICS charged and Continental paid for improper mark-ups to postage costs in violation of the Agreement, and damages for fraud for ICS's willful and fraudulent misrepresentations, together in excess of $1 million and to be determined at trial[.]"[17]  Continental's contention that the misrepresentation of the postage and freight costs on invoices and documentation distinguishes the fraud damages from the breach of contract damages is unconvincing.  Continental has not articulated how its fraud damages would be distinct from, or in addition to, its contract damages.

## C.     The fraud claim is not pleaded in the alternative.

14.     Finally, Continental argues its fraud claim must survive because Delaware allows plaintiffs to plead claims in the alternative.  "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses."[18]  Continental argues it should be allowed to plead fraud in the alternative because ICS may be challenging whether the Agreement was enforceable.[19] ICS counters that Continental pleads no

---

[17] Compl. 11.
[18] Super. Ct. Civ. R. 8(e)(2).
[19] Pl.'s Answering Br. 8.

alternative theory where ICS's duty not to inflate postage and freight costs does not arise under the Agreement.[20]

15.     In this case, Continental did not explicitly plead the breach of contract claim and fraud claim in the alternative. More importantly, Continental may not use alternative pleading to circumvent the pleading requirements for a fraud claim. The case law addressing pleading fraud in the alternative involves cases in which the alleged misrepresentations induced the parties to enter into the contract, which is conduct "separate and distinct" from the contract.[21] Accordingly, Continental's fraud claim is dismissed in its entirety.

## II.     Continental sufficiently pleads that the statute of limitations tolled.

16.     As to Continental's breach of contract claim, ICS contends Continental's claim for damages occurring before July 23, 2016 is barred by the three-year statute of limitations. ICS argues the statute of limitations was not tolled because Continental was on inquiry notice of its claim as early as February 2014 when ICS sent out the first monthly statement and itemized invoice that included postage costs. ICS argues it could not be held to have concealed the charges when it provided documentation reflecting the charged amounts. ICS additionally

---

[20] Def.'s Reply Br. in Support of its Mot. to Dismiss (hereinafter "Def.'s Reply Br.") 5.
[21] *Ashland LLC v. Samuel J. Heyman 1981 Continuing Trust for Heyman*, 2018 WL 3084975, at *13-14 (Del. Super. June 21, 2018).

9

contends that, as Continental has alleged over $1 million in damages, a person of reasonable intelligence would have inquired into "such massive overcharges" sooner than five years after the business relationship began.

17. There is a three-year statute of limitations for breach of contract claims in Delaware.[22] Generally, the statute of limitations "begins to run when a plaintiff's claim accrues[,] which occurs at the moment of the wrongful act and not when the effects of the act are felt even if the plaintiff is ignorant of the cause of action."[23] In breach of contract actions, the claim accrues when the breach occurs.[24]

18. Delaware courts, however, recognize limited exceptions that toll the statute of limitations under certain circumstances.[25] One such exception is fraudulent concealment, which tolls the statute of limitations where "there was an affirmative act of concealment or some misrepresentation that was intended to put a plaintiff off the trail of inquiry until such time as the plaintiff is put on inquiry notice."[26] Mere ignorance of the facts without an act of concealment or misrepresentation does not toll the statute of limitations.[27] When it is clear from the face of the complaint that a cause of action accrued more than three years before the

---

[22] 10 *Del. C.* § 8106.
[23] *Silverstein v. Fischer*, 2016 WL 3020858, at *4 (Del. Super. May 18, 2016) (internal quotations omitted).
[24] *Id.*
[25] *Id.*
[26] *Krishna v. Asura Dev. Grp., Inc.*, 2017 WL 1103013, at *5 (Del. Super. Mar. 24, 2017); *see Silverstein*, 2016 WL 3020858, at *5.
[27] *Krishna*, 2017 WL 1103013, at *5.

10

complaint was filed, a plaintiff must plead facts sufficient to toll the statute of limitations.[28] Fraudulent concealment must be pleaded with particularity.[29]

19. Continental pleads facts with sufficient particularity to sustain the claim in the face of a motion to dismiss. The Court cannot conclude on the current record that invoices with line items for postage and freight costs put Continental on inquiry notice that ICS was charging an amount other than the contracted rate.[30] Continental alleges ICS falsely represented that the invoiced amounts reflect ICS's actual costs, and Continental had no reason to suspect otherwise until the end of 2018 when it received substantially lower bids from other vendors. Those allegations are enough to plead tolling and overcome ICS's motion to dismiss.

## III. Continental is not entitled to attorneys' fees.

20. Delaware follows the American Rule with regard to attorneys' fees, which provides that litigants pay their own attorneys' fees regardless of the lawsuit's outcome.[31] Delaware courts allow fee shifting only where there is express

---

[28] *Id.* at *4-5.

[29] *See* Super. Ct. Civ. R. 9(b); *Krishna*, 2017 WL 1103013, at *6.

[30] If ICS later can show Continental was on inquiry notice on some earlier date, the Agreement's Right to Audit provision may have some relevance to the statute of limitations analysis. Presently, however, that provision is meaningless because Continental had no obligation to affirmatively seek out evidence of fraud when it had no suspicions regarding ICS's billing practices.

[31] *Gatz Props., LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1222 (Del. 2012) ("Under the American Rule, absent express statutory language to the contrary, each party is normally obliged to pay only his or her own attorneys' fees.") (citations omitted); *Reserves Dev. LLC v. Crystal Props., LLC,* 986 A.2d 362, 369 (Del. 2009).

11

contractual language contrary to the general rule or the suit is brought in bad faith.[32] Bad faith has been found "where parties have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims."[33]

21.   ICS argues Continental's claim for attorneys' fees should be dismissed because (i) there is no attorneys' fees provision in the Agreement, and (ii) the bad faith exception is inapplicable as Continental is the party that brought the suit. Continental contends it preserved its ability to seek attorneys' fees by including a statement in the complaint's prayer for relief. Continental argues the Court should retain its power to shift attorneys' fees in the event the case warrants doing so, and should not strike Continental's request this early in the proceedings.

22.   Here, Continental is not presently entitled to attorneys' fees. There is no express contractual language in the Agreement providing for fee shifting. Additionally, the bad faith exception presently does not apply as Continental is the party who brought the suit and there is no current allegation that ICS is engaging in bad faith litigation conduct. Continental's claim for attorneys' fees therefore is dismissed.

---

[32] *See Gatz Props., LLC*, 59 A.3d at 1222.
[33] *Id.* ("Our courts have, however, recognized bad faith litigation conduct as a valid exception to that rule.") (citations omitted).

## CONCLUSION

23. For the reasons stated above, Defendant ICS Corporation's Partial Motion to Dismiss is **GRANTED** as to Count II of the Complaint and as to Plaintiff's request for attorneys' fees, and **DENIED** as to Count I. **IT IS SO ORDERED.**

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Michael S. Hino, Esquire
        Joanna J. Cline, Esquire
        Ellis E. Herington, Esquire
        Thomas E. Hanson, Esquire
        Casey Green, Esquire

13